several years. He further represented that his habits had always been temperate and sober, although, in his first application, he qualified this statement by saying that he "formerly used some beer"; and the falsity of this representation is likewise fully established by the evidence of witnesses who frequently saw him under the influence of liquor. It is but fair to say, however, that there are circumstances attending some, if not all, of these representations which it is claimed take them out of the operation of the rule which has just been adverted to, and this contention is not without some substantial foundation; but the breach of warranty to which we have directed our principal consideration seems so clearly established, and so fatal to the plaintiff's case, that we do not deem it necessary to give to the other questions which have been presented the examination which they would otherwise be entitled to receive. For the reason first stated we think that the judgment and order appealed from should be reversed, and a new trial granted.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(28 App. Div. 591.)

REYNOLDS v. ÆTNA LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department. April 26, 1898.)

1. RECEIVERS—ENDOWMENT POLICIES.
　　A creditor appointed as receiver of his debtor becomes vested with the title to life endowment policies payable to the debtor or his estate.

2. CONSTRUCTIVE TRUST—CONCEALMENT OF PROPERTY BY DEBTOR.
　　A debtor who fraudulently conceals from a creditor appointed as his receiver the existence of life endowment policies payable to himself holds such policies under a constructive trust for the benefit of the receiver.

3. SAME—FRAUDULENT ASSIGNMENTS—ADMINISTRATRIX.
　　Where a debtor by operation of law held endowment policies in trust for his receiver, and fraudulently assigned them, in trust, and without consideration, to a relative, who on his death reconveyed them without consideration to his widow, who was appointed his administratrix, the only interest the administratrix received was the equitable right to the balance after the payment of the receiver's claims.

4. LIMITATIONS—TRUSTS.
　　The rule that so long as a trust subsists the right of a cestui que trust cannot be barred by the length of time during which he has been out of possession, and that he can only be barred by barring and excluding the estate of the trustee, applies to a creditor of an intestate, since an administrator is a trustee of the estate.

5. ADMINISTRATRIX—DUTY TO DISCLOSE ASSETS TO RECEIVER.
　　It is the duty of an administratrix to disclose to a receiver of the intestate, appointed before his death, assets belonging to intestate.

6. PURCHASE OF TRUST PROPERTY—KNOWLEDGE—SAME TITLE AS THAT OF ASSIGNOR.
　　A receiver of a corporation, of which intestate had been the principal owner, with knowledge that intestate's administratrix had concealed certain life endowment policies payable to intestate, in fraud of a judgment creditor of intestate, appointed as his receiver, was permitted by the court, on representing that the policies were payable to administratrix, to collect such

endowment insurance, under an assignment by administratrix to him of the policies. *Held* that, since the receiver of the corporation obtained the money with full knowledge of, and participation in, the fraud, he obtained no better title than the administratrix had, which was only the equity over and above the amount necessary to pay the claims of said receiver.

7. FOLLOWING TRUST PROPERTY.
   Where there has been a misapplication of trust property, which can be traced into hands affected with notice of such misapplication, a trust will attach on the property or proceeds in such hands.

8. ADMINISTRATORS—PURCHASE OF ASSETS OF ESTATE.
   An administrator cannot purchase, directly or indirectly, the property of his intestate.

Appeal from special term, Kings county.

Action by Frank Reynolds, as receiver of Richard Worthington, against the Ætna Life Insurance Company and others, to recover insurance money. From a judgment for plaintiff for $5,676.28 and costs against the company, and a judgment against the other defendants jointly with the company for costs, defendant company appeals. Modified.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

William S. Bennett, for appellant.
James Manson Fisk, for respondent Little, as receiver.
William C. Davis, for respondents Worthington and others.
Frederic A. Ward, for plaintiff.

WOODWARD, J. In May and August of the year 1882 the Ætna Life Insurance Company, a foreign corporation doing business in this state, issued two policies of insurance, for $5,000 each, upon the life of Richard Worthington, payable to himself at the end of 20 years, or, in the event of his death, to his estate. Subsequently, and in 1885, the said insurance company issued another policy upon the life of Richard Worthington, payable to his wife, on the same terms as the other policies. This latter policy is not involved in the present action, except in an incidental way, and is mentioned here only for the purpose of making some subsequent points clear. On the 9th day of March, 1888, the plaintiff in this action was appointed receiver of Richard Worthington, upon a judgment recovered against him personally by Bulkley, Dunton & Co., and, upon his qualification as such receiver, became vested with the title to the first two policies. All knowledge of the existence of these policies was kept from the plaintiff, and in 1894 Richard Worthington and his wife, Margaret, joined in a written assignment of the first two policies, "in trust, for convenience," to Jennie Doman, a niece of Worthington. This assignment was without consideration, and, as the trial court has found, "was made in fraud of creditors, and to keep the said policies from the reach of the creditors of Richard Worthington." On the 7th day of October, 1894, the said Richard Worthington died intestate; and the defendant Margaret Worthington was duly appointed, and has qualified, as his administratrix. After the death of Mr. Worthington, Jennie Doman transferred the policies which she was holding in fraud of the creditors of Richard Worthing-

ton to Margaret Worthington, his widow; and the trial court finds that this assignment of the policies was made with—

"Intent to place the said policies, and the moneys represented thereby, beyond the reach of the plaintiff and the creditors of Richard Worthington, and with intent to hinder, delay, and defraud the creditors of the said Richard Worthington, and were without any consideration whatsoever. That subsequently, and on or about the 8th day of December, 1894, the said defendant Margaret Worthington, personally and as administratrix of Richard Worthington, and with intent to hinder, delay, and defraud the creditors of Richard Worthington, made an assignment of the said policies of insurance to the defendant Joseph J. Little, as receiver of the Worthington Company, upon the condition that he, the said receiver, would pay to the said Margaret Worthington, personally, out of the proceeds of said policies, thirty-seven and one-half per cent. thereof. The said assignment was fraudulent as to creditors, and in breach of the trust reposed in said Margaret Worthington as administratrix, and was accepted by the defendant Joseph J. Little with knowledge of the preceding assignment made by Richard Worthington and Margaret Worthington to Jennie Doman, and by said Jennie Doman to said Margaret Worthington, and with knowledge, also, of the appointment of the plaintiff as receiver of said Richard Worthington."

Prior to this time, and on the 26th of January, 1893, by an order of the supreme court, Joseph J. Little was appointed temporary receiver of the Worthington Company, a corporation which in fact consisted almost wholly of Mr. Worthington and his wife, and which was managed by Worthington as his own property, with the consent of all those in interest, in a proceeding for its dissolution on the ground of its insolvency, and subsequently this receivership was made permanent. On the 16th day of April, 1894, the receiver, Little, served a written notice on the defendant the Ætna Life Insurance Company, claiming to be the equitable owner of these policies of insurance, on the ground that the premiums had all been paid out of the fund of the Worthington Company, in fraud of its creditors, and this contention was subsequently made in the proceedings, being set up as a defense in the action now under consideration; but the trial court finds it to have no foundation, declaring that:

"At the time when the said payments of premiums were made by drafts upon the Worthington Company, all the members of the said corporation (directors and stockholders) assented to the use of said moneys for the purpose of paying said premiums, and acquiesced in such disposition of said moneys; and the defendant Joseph J. Little has no right or title to the said policies, or either of them, as receiver of the Worthington Company, in law or in equity, as against this plaintiff."

At the time of the death of Richard Worthington there were several suits pending against him and against the said Margaret Worthington, brought by the defendant Joseph J. Little, as receiver, in an effort to recover moneys which were claimed to have been wrongfully taken from the Worthington Company. At that time the said Margaret Worthington claimed to be entitled to all the proceeds of all the insurance policies,—among them, the policies of the Ætna Life Insurance Company, now under consideration. A compromise was effected, and on the 1st day of December, 1894, an order was made—

"At special term of the supreme court, First judicial department, on the verified petition of said Joseph J. Little, as receiver, with notice thereof to the attorney general of the state of New York, and to such attorneys for the creditors of said Worthington Company as had filed notices of appearance, authorizing and directing said Joseph J. Little, as such receiver, to accept from Mar-

garet Worthington, in compromise and settlement of all pending and future litigations, the delivery of the policies issued by the said Ætna Life Insurance Company, now in question, and of all other life insurance policies in other companies issued on the life of Richard Worthington, then deceased, and directing the said receiver, Joseph J. Little, to take all necessary steps to collect the amount due on all of said policies so issued on the life of said Richard Worthington, and to commence and prosecute such actions as may be necessary for that purpose, and, on receipt of the several amounts due on any of the said life insurance policies, to pay to said Margaret Worthington thirty-seven and one-half per cent. of the amount received on each. That said settlement was fully carried out, and the said Margaret Worthington delivered to said Joseph J. Little, as receiver, all the policies of life insurance then in her possession, including policy No. 134,993, on which the sum of $5,000 was due, and on policy 135,896, for $5,000, less the sum of $1,200 loaned by the Ætna Life Insurance Company to Richard Worthington in his lifetime, and policy No. 146,855, on which there was due the sum of $5,000."

This last-mentioned policy is the one payable to Mrs. Worthington, and is not properly involved in this controversy.

Prior to the making of this order of December 1, 1894, the proposed compromise was submitted, not to this plaintiff, but to David G. Garabrant, one of the firm of Bulkley, Dunton & Co., the judgment creditors in the action, in whose behalf this plaintiff was appointed receiver of the property and estate of Richard Worthington, and by him fully approved in writing; but the trial court finds that:

"At the time when Bulkley, Dunton & Co. so approved of the agreement between Margaret Worthington and the defendant Joseph J. Little, receiver of the Worthington Company, to divide the proceeds of the said policies of life insurance, they were not aware that by the terms of the said policies they were made payable to the said Richard Worthington, or to his estate, and were deceived by the terms of the petition of said Little, receiver, asking authority to make said settlement."

After getting the policies into his possession, the said Little, receiver, filed with the Ætna Life Insurance Company proofs of the death of Richard Worthington, and the policies became due and payable within 90 days thereafter. Just prior to the expiration of the 90 days, and on the 18th day of March, 1895, the said Ætna Life Insurance Company commenced an action in equity, in the nature of an interpleader, in the supreme court, against the defendants named in the present action, setting forth the issuing of said policies to the said Richard Worthington; his death; the filing of the notice of Joseph J. Little, receiver, claiming the equitable ownership of the policies; certain assignments of said policies by Richard and Margaret Worthington,—and alleging that it "has no claim upon the amounts due upon the policies herein," and that it "is indifferent as between the defendants, has no interest in the claims of any of them, is justly indebted to some one of the defendants, or set of defendants, in the sum of $13,598, and is ready to pay the same to the defendant or defendants lawfully entitled thereto," and praying judgment "that it may be given leave to bring the said sum of $13,598 into court, to be disposed of as the court may direct." The receiver, Joseph J. Little, answered, claiming the ownership of the money under said policies, for the reasons hereinbefore set out, and asked that the said sum of $13,598 be

paid to him. The other defendants admitted the ownership to be in the said receiver. Thereafter, upon notice, an order was made in the said interpleader action ordering and directing that the Ætna Life Insurance Company pay said sum of $13,563 to the chamberlain of the city of New York, that it receive the sum of $35 for its costs in said action, and that upon said payment the company be released and discharged from all liability to any and all of the defendants in such action; and such order further provided that the said chamberlain pay the amount so deposited, viz. $13,563, to the defendant Joseph J. Little, as receiver of the Worthington Company. This order was carried out, and the money was paid to the chamberlain, who paid it over to Little, receiver, who in turn paid over 37½ per cent. of the sum to Mrs. Worthington. On the morning of the day on which the order directing the payment of this fund was made, the summons and complaint in the present action were served upon the attorney of the Ætna Insurance Company, and this fact was communicated to the attorneys of the other defendants; the trial court finding that:

"At the time when the said moneys were paid by the defendant the Ætna Life Insurance Company to the chamberlain of the city and county of New York, and when they were paid by the said chamberlain to the said Little, receiver, and by the said Little, receiver, to the said William C. Davis, attorney for Margaret Worthington, the said Little, receiver, and Margaret Worthington had knowledge and notice of the fact that this action had been brought, and that a receiver had been appointed of Richard Worthington, the payee of the said policies; and I further find that the said Little, receiver, and Margaret Worthington, and their respective counsel, contemplated the possibility that the creditors of Richard Worthington would interfere with the said settlement aforesaid."

The trial court further found that Little, receiver, did not obtain the money upon the said policies, or either of them, upon his own independent claim as receiver of the Worthington Company; and it follows, therefore, that his claim to the moneys paid by the insurance company upon the policies in dispute is derived solely from the assignment of such policies to him by Margaret Worthington, personally and as administratrix.

Upon the above facts the trial court finds, as conclusions of law, that the complaint should be dismissed as to Mary Glover, without costs; that the issue of fraud raised between the defendants by the supplemental answer of the insurance company is not sustained, and that, if it had been, it could not affect the plaintiff's rights against the defendants to have his claim to the money adjudged good over all other claims, and that it be paid by the company; "that the plaintiff's claim to the money due upon the said policies, to the extent of the amount of the judgment upon which the plaintiff was appointed receiver, is good over the claims of any other defendant, and he is entitled to recover the same of the defendant company." With this conclusion of law we are not disposed to quarrel; but the equitable jurisdiction of this court is invoked to poor purpose if a transaction conceived in fraud, and consummated in deception, trickery, and sharp practices, resulting in a gain of more than $6,000 to the wrongdoers, and a conse-

quent loss to innocent parties, is to receive the sanction of this court, in the ratification of the judgment ordered in the court below. "He who receives what is not due him, even although he were truly persuaded that it were due to him, and he who pays it were of the same mind likewise, acquires no manner of right to what is paid him in this manner, but he ought to restore it." Thus wrote Jean Domat, author of Domat's Civil Law, of whom Chancellor D'Augesseau said, "No one has gone more profoundly than Domat into the true principles of law, or explained them in a manner more worthy of a philosopher, of a jurisconsult, and of a Christian;" and what was true in the closing years of the seventeenth century is equally true to-day. It requires no argument to show that Joseph J. Little, receiver, has been paid that which was not due to him; and it is almost equally clear that this court having adjudicated the matter, as between the defendants in this action, in the interpleader action, there is no way in which he can be compelled to restore this money, and do justice by all the parties, unless this court, with all the parties before it, calls to its aid those principles of equity which forbid that transactions against good conscience should prevail, and so amends the judgment that it will not clothe with respectability that which is wrong, nor permit those who have acted in good faith to suffer. This we believe may be done without violence to law, and in harmony with those principles of equity which have long received the sanction of the courts in England and America.

We shall be aided in arriving at a correct conclusion in this case if we take into consideration the relations of the principal parties to the property involved, and to each other. It will not be necessary to deal with the minor actors, as their conduct did not change the case, in its legal or equitable bearings, and only tended to show the disposition to fraud which prevailed throughout. It will be conceded by all that, upon the appointment and qualification of Frank Reynolds as receiver of the property and estate of Richard Worthington, he became vested with the legal title to the insurance policies involved in this litigation, and which were, by their terms, made payable to Richard Worthington or his estate. Bostwick v. Menck, 40 N. Y. 383. It appears from the evidence, however, that Richard Worthington, instead of surrendering these policies to the plaintiff, kept them secreted; he held them in his own possession, in fraud of the rights of this plaintiff. It is to be kept in mind, however, that Richard Worthington had a certain equitable right in these policies. They belonged to him or his estate, absolutely, upon the payment of the judgment secured by Bulkley, Dunton & Co., upon which this plaintiff was appointed as receiver. While he was therefore possessed of a certain equitable right,— of any remainder after the payment of this judgment,—he was holding these policies in fraud of his creditors, as represented by the plaintiff.

"The law," says Tiff. & B. Trusts, 113, "abhors fraud, and will punish it by the administration of a wholesome justice in all cases; and even with a stern justice, in such cases as a moral and just sense would seem to demand. In

equity, the summary remedy is to convert the wrongdoer into a trustee, and the one whose rights have been invaded thereby into a cestui que trust, and then to enforce the execution of the trust. * * * Actual fraud implies an intention to be unjust, or to do injustice, through concealment or misrepresentation, and actions designed to carry out such intentions. It implies a criminal intent, and taints the consciences of all parties and privies thereto." Again the same authority says, at page 196: "Where the conveyance is not absolutely void, so as to confer no legal interest whatever, a trust will be raised in favor of the creditors, on proper application to the court."

The plaintiff in this action could make no proper application to the court to fasten a trust upon the policies held by Richard Worthington, because the fraudulent concealment of the policies, and the fraudulent assignments of them to other persons, kept from him the knowledge of their existence for years after the legal title vested in him. But as equity does not favor the wrongdoer, and it is conceded that the possession of these policies by Richard Worthington was fraudulent as against his creditors, we can see no objection to this court holding that the said Richard Worthington held these policies in trust for the plaintiff. This is a case coming clearly within the vigorous language of the court in Newton v. Porter, 5 Lans. 416, Justice Balcom speaking. He says:

"The court should not refuse to allow a party to recover the avails of property stolen from him, on any technical grounds, when the merits of the case clearly require that he should recover; and the court should jump all technicalities, and be as astute in discovering a remedy for upholding the rights of such a party as the thief is in contriving ways and means to cheat him out of his property, and the avails of it, by changing the same from one kind to another, and placing it in the hands of third persons."

While it is true that the plaintiff in this action is not to be cheated out of his rights, under the judgment of the court below, he can only recover at the expense of an innocent party, to whom he is under obligations for the information which enables him to recover at all; and we cannot conceive it to be within the province of a court of equity, which boasts that it will allow no wrong to be without a remedy (1 Term R. 512), to sanction a judgment under which this wrong may be consummated.

"I do not mean, by what I have said," says Potter, J., in the case of Newton v. Porter, supra, "to hold that the receiver or purchaser of stolen property or its avails cannot be treated as a trustee for the true owner. If a case is presented in which that should be the only or the best condition of liability to impose upon the possessor, I think the law of equity in such a case would cast that character upon him. It is its boast that it will allow no wrong to be without a remedy. Nor will the law, on account of the remedy in such a case, allow itself, in its executive capacity, to work a wrong, if the court have jurisdiction of the matter. 2 Just. Inst. 482." In the same case, Potter, J., says: "I hold the law to be that, wherever the circumstances of a transaction are such that the person who takes an estate in property cannot enjoy the beneficial interest without necessarily violating some established principle of justice and equity and good morals, the court will immediately raise a constructive trust, and fasten it on the conscience of the possessor, and convert him into a trustee for the true owner. In all such cases, courts of equity have adopted principles extremely broad and comprehensive, in the application of remedial justice. They will interfere, not only to administer wholesome justice, but even stern justice, in favor of innocent persons who are sufferers by it without any fault on their side. And this is readily done, by converting the offending party into a trustee, and making the property so held subservient to the proper purposes of recompense, by way of equitable trust."

In this case (Newton v. Porter), George Warner had stolen from Elizabeth Newton, the plaintiff, certain bonds, to the value of $14,000. These bonds were transferred to William, a brother of George, and with knowledge of the fact that they were stolen. William delivered these bonds to Alfred D. Lusk, who, knowing that they had been stolen, sold them, with the consent of the Warner brothers, and converted the same into money, dividing the same between the parties to the transaction. Those moneys were afterwards loaned on various securities, and Porter, Miner, and Warren came into possession of these securities, knowing that they were the results of the original theft. Commenting on this state of facts, Justice Balcom says:

"It is clear that Porter, Miner, and Warren ought not, according to the rules of equity and good conscience, as administered in courts of chancery, to hold and enjoy all the notes and mortgages, or the entire avails thereof, in question in this action, and that, in order to do complete justice to the plaintiff, the court should raise a trust, by construction, out of the facts in the case, and fasten it upon the consciences of those defendants, and convert them into trustees of the legal title, and order them to execute the trust in such manner as to protect the rights of the plaintiff. Such a trust is called a 'constructive trust.' Such trusts differ from other trusts in that they are not within the intention or contemplation of the parties at the time the contract is made, from which they are construed by the court, but they are thrust upon a party contrary to his intention, and against his consent. A court of equity, by raising a trust by construction, in a case like this, can do equal and complete justice between the parties. Perry, Trusts, § 166; Hill, Trustees; Bank v. Pollock, 4 Edw. Ch. 215; Thompson v. Perkins, 3 Mason, 232, Fed. Cas. No. 13,972."

"If a person obtains the legal title to property by such arts or acts or circumstances of circumvention, imposition, or fraud," says Perry, Trusts, § 166, "or if he obtains it by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rules of equity and good conscience, as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it, or to execute the trust, in such manner as to protect the rights of the defrauded party, and promote the safety and interests of society."

And we can see no good reason why this rule should not prevail when by the same methods the one in whom the legal title vests is kept from the enjoyment of the possession of the property.

Taking the most charitable view of the question, Richard Worthington held these insurance policies in trust for the payment of the judgment creditors represented by the plaintiff in this action. He did not have the legal title, so his assignment in trust to Jennie Doman, without consideration, could have conveyed no possible title, and the assignment made by Jennie Doman to Margaret Worthington was equally without effect. The only interest that Margaret Worthington could have in the policies, therefore, was the equitable right, after the payment of the judgment creditors, which came to her as administratrix of the estate of Richard Worthington. Even assuming that she became possessed of this equity by reason of the fraudulent assignments, she would have had notice of the trust, by reason of the part which she took in the assignments to Jennie Doman for the sake of defrauding the creditors. But those assignments were without consideration, and these policies came into her possession purely and

simply as the administratrix of the estate of Richard Worthington. As was said by Chancellor Kent in the case of Decouche v. Savetier, 3 Johns. Ch. 216:

"She took the property into her hands as administratrix. This was a direct and express trust, and she could not have set up the statute of limitations as a bar to the widow and next of kin. It would be unjust for the person who takes possession of the property of the intestate, under the authority of law, qua administratrix, to be at liberty, after six years' possession, to set up the statute of limitations as a bar to the cestuis que trustent. All the cases admit that no time bars a direct trust, as between trustee and cestui que trust. The settled rule is (and so it was recently declared by the master of the rolls in Cholmondeley v. Clinton, 2 Mer. 360) that, so long as a trust subsists, the right of a cestui que trust cannot be barred by the length of time during which he has been out of possession, and that he can only be barred by barring and excluding the estate of the trustee. This general rule applies to this case, for an administrator is a trustee for the party entitled by law. His very office is a trust, and he can take in no other capacity. Lord Hardwicke said (2 Ves. Sr. 482) that executors and administrators were, to many purposes, considered, in chancery, as trustees."

"An executor or administrator," says Williams, Ex'rs (6th Am. Ed.) p. 2117, "is liable, in his representative character, to all equitable demands, with regard to personal property, which existed against the deceased at the time of his death;" and "executors and administrators are, in almost every respect, considered, in courts of equity, as trustees. Upon this principle, those courts exercise a jurisdiction over them, in the administration of assets, by compelling them, in the due execution of their trust, to apply the property to the payment of debts and legacies, and the surplus according to the will, or, in case of intestacy, according to the statute of distributions."

Again, the same authority says that a court of equity will "compel an executor or administrator, in the same manner as it does an express trustee, to discover and set forth an account of the assets, and of his application of them." The same doctrine is asserted in Pom. Eq. Jur. § 157, and is fully sustained by authority.

Richard Worthington, at the time of his death, was, with the exception of these policies, which were kept concealed in fraud of the rights of this plaintiff, as the representative of creditors, insolvent. He was not supposed to have any estate. But this fact does not prevent this court, upon the discovery that there was an estate, taking steps to compel a righting of the wrong which has been attempted. Margaret Worthington having come into the possession of these policies as administratrix of the estate of Richard Worthington, and, by virtue of her office, "trustee for the party entitled by law," it became her duty to discover to Frank Reynolds, as receiver of the property and estate of Richard Worthington, the fact of the existence of these assets. This was her moral duty at the time of the appointment of this plaintiff as receiver, or at any time prior to the death of her husband, but upon her appointment as administratrix this moral duty became a legal duty. She was, in law, the trustee of these policies for "the party entitled by law"; and this party, as we have seen, is the plaintiff in this action, who is the representative of the judgment creditors, in whose behalf he was made receiver. Instead of discharging this duty, Margaret Worthington, in pursuance of the same fraudulent purpose which actuated both herself and her husband in the effort to conceal these policies, and thus defraud his creditors, entered into an arrangement with Joseph J. Little, receiver of the Worthington Company, by

which she, as administratrix, and personally, transferred these policies on condition that she should receive to her own use 37½ per cent. of the proceeds; and this compromise, sanctioned by the judgment creditors through the misrepresentations of the said Little, was by like methods given the approval of an order of this court. This transfer was made to Joseph J. Little, as receiver, with full knowledge of the fraudulent transfers, and of the appointment of this plaintiff as receiver of the property and estate of Richard Worthington. He knew the facts, and, knowing them, he could get no better title than that possessed by Margaret Worthington; and this, as we have seen, consisted only in the equity title to whatever of remainder there might be after the payment of the judgment creditors of the deceased.

"Another class of constructive frauds," says Story, Eq. Jur. § 395, "consists of those where a person purchases with full knowledge of the legal or equitable title of other persons to the same property. In such cases he will not be permitted to protect himself against such claims, but his own title will be postponed and made subservient to theirs. It would be gross injustice to allow him to defeat the just rights of others by his own iniquitous bargain. He becomes, by such conduct, particeps criminis with the fraudulent grantor; and the rule of equity as well as of law is, 'Dolus et fraus nemini patrocinari debent.' And, in all such cases of purchases with notice, courts of equity will hold the purchaser a trustee for the benefit of the persons whose rights he has thus sought to defraud or defeat." Again, at section 1257, the same author says: "Another instance, perhaps more comprehensive in its reach, in which courts of equity act by creating trusts in invitum, is where a party purchases trust property, knowing it to be such, from the trustee, in violation of the objects of the trust. In such a case courts of equity force the trust upon the conscience of the guilty party, and compel him to perform it, and to hold the property subject to it in the same manner as the trustee himself held it. * * * It is upon this ground, and this alone, that persons colluding with the executor or administrator in a known misapplication of the assets of the estate are made responsible for the property in their hands; for they are treated as purchasers with notice, and thus as mere trustees of the parties who are entitled to the assets,—the latter being a trust fund under the administration of the executor or administrator."

Joseph J. Little, receiver, knew that these policies of insurance belonged to the estate of Richard Worthington. He knew that this plaintiff had been appointed receiver of that estate, and that Margaret Worthington, as administratrix, was a trustee of any property which might be in her possession as such administratrix, for the benefit of the creditors of Richard Worthington; and, in the act of aiding her to divert the proceeds of these policies from the creditors of the estate of Richard Worthington to her own use, he became, in the eyes of a court of equity, the trustee of these creditors, and the insurance policies in his hands were impressed with this trust. It should be borne in mind, in considering this case, that it is one which, in a measure, involves the good name of this court. Joseph J. Little, as receiver, is an officer of this court; he is appointed out of the equity jurisdiction of the court; and it is not in harmony with the dignity or character of this tribunal that one of its officers should involve it in a predicament where it will be guilty of an injustice to one who has performed in good faith all that he was under obligation to perform. As an officer of this court, Joseph J. Little was under peculiar obligation to act in entire good faith; and it was his duty, on discovering the assets in the hands of Margaret Worthington, and knowing of the appointment

of the plaintiff as receiver, to inform him of the fact.    Instead of doing
this, we find him entering into a compromise agreement with Margaret
Worthington, by which the assets of the estate of Richard Worth-
ington are to be diverted from their legitimate channels.    Not only
does he do this, but he exercises his ingenuity to deceive the creditors
and the court as to the true character of the assets, and, by a series of
sharp practices, succeeds in getting the funds which belonged to the
creditors of Richard Worthington into his own hands, and into the
hands of his accessory in the fraud.    He then comes into this court,
and assuring us that the Ætna Life Insurance Company is estopped
from asserting its claims against him as receiver, by reason of its
interpleader action, coolly asks that the judgment of the court below
in favor of the plaintiff, and against the insurance company, be af-
firmed.

  "It is a clearly-established principle in that jurisprudence" (that of equity),
say the court in the case of Oliver v. Piatt, 3 How. 333, 401, "that whenever
the trustee has been guilty of a breach of the trust, and has transferred the
property, by sale or otherwise, to any third person, the cestui que trust has a full
right to follow such property into the hands of such third person, unless he
stands in the predicament of a bona fide purchaser for a valuable consideration,
without notice.    And if the trustee has invested the trust property or its pro-
ceeds in any other property, into which it can be distinctly traced, the cestui
que trust has his election either to follow the same into the new investment, or
to hold the trustee personally liable for the breach of the trust."

  In the case at bar the insurance company set aside a certain fund for
the payment of those policies, and that fund has been paid into court,
and is still in the control of an officer of this court.    He came into
possession of these policies with full notice of the trust with which they
were impressed, and he cannot, by any mere jugglery in changing the
character of the property, escape the obligations imposed upon him as
a trustee of the judgment creditors of Richard Worthington.
  In the case of James v. Cowing, 17 Hun, 256, it was said by the court
that:

  "It is a well-settled principle of law that a purchase, though for a valuable
consideration, from a trustee, with knowledge of the trust, carries with it all the
obligations of the trust.    Tiff. & B. Trusts, p. 107;  Perry, Trusts, §§ 217, 328;
Wormley v. Wormley, 8 Wheat. 421;  Gautier v. Manufacturing Co., 13 Hun,
514.    The general doctrine is that wherever there is a misapplication of the as-
sets, and they can be traced into hands affected with notice of such misapplica-
tion, a trust will attach upon the property or proceeds in such hands."

  Clearly, both the defendants Little and Margaret Worthington, who
have the proceeds of these insurance policies, were fully aware of the
trust.    They had been to much trouble to avoid its obligations, and
were familiar with its every aspect;  and they would now have no
cause to complain if this court, in the discharge of its duty, should de-
cree that they return to the insurance company so much of the funds
now in their possession as shall be necessary to discharge the trust im-
pressed upon those insurance policies through the frauds to which
they have been parties in the various stages.

  "But come now to the case of use," says Lord Bacon in his Reading on the
Statute of Uses (Bacon's Works, vol. 4, p. 190), "and there it is otherwise, as
it is in 14 Hen. VIII., and 28 Hen. VIII., and divers other books, which prove
that if the feoffee sell the land, for good consideration, to one that hath notice,

the purchaser shall stand seised to the ancient use; and the reason is, because the chancery looketh further than the common law, namely, to the corrupt conscience of him that will deal in the land knowing it in equity to be another's; and, therefore, if there were radix amaritudinis, the consideration purgeth it not, for it is at the peril of him that giveth it; so that consideration or no consideration is an issue at the common law, but notice or no notice is an issue in the chancery. And so much for the preserving of uses."

"This conclusion," says Pom. Eq. Jur. § 659, "reached originally by the court of chancery, has, in England, furnished a rule for that tribunal alone, and has not been accepted by the courts of law. In this country it is recognized and enforced alike by the courts of equity and of law, for the reason that both have jurisdiction in matters of fraud. The doctrine is, in fact, a mere application of the broader general principle that a person who purchases an estate, although for a valuable consideration, after notice of a prior equitable right, makes himself a mala fide purchaser, and will be held a trustee for the benefit of the person whose right he sought to defeat."

This doctrine is fully asserted in the cases of Shepherd v. McEvers, 4 Johns. Ch. 136; Murray v. Ballou, 1 Johns. Ch. 566; and in Colt v. Lasnier, 9 Cow. 340. See, also, Tiff. & B. Trusts, p. 197.

While it is not necessary, perhaps, to go into this question further, for the purpose of modifying the judgment of the court below in accord with the equitable principles which we have had under discussion, it seems to be proper to consider the orders which have been granted in this court, and the relations of the parties to such orders, that our duty in the premises may more fully appear.

"Upon the same principles," says Perry, Trusts, § 205, "administrators and executors cannot purchase the estate under their charge to administer. They cannot purchase directly of themselves, nor from the heirs, legatees, devisees, or other persons interested in the estate; nor can they purchase indirectly, by procuring a third person to purchase in the first instance, and by receiving a conveyance from such third person. This rule is so strict, that they cannot purchase any of the assets of the estate under their charge, although the assets are ordered by the court to be sold at public auction."

"It is upon the same principles as above stated," say Tiffany and Bullard in their Law of Trusts and Trustees (page 149), "that executors and administrators are prohibited from dealing with the estates of their testators or intestates. The reason for the rule is obvious. Where executors and administrators are permitted to purchase for themselves that property which it is made their duty to sell, they would violate that principle of public policy which prohibits the same individual to combine the character of vendor and purchaser. Generally, in the United States, they are prohibited from purchasing, directly or indirectly, their testator's estate. The application of the rule cannot be evaded by the intervention of a third person, purchasing for the executor. The reason of the rule continues, and therefore the rule continues. But where the sale was made in good faith to a stranger, without any previous understanding that the executor was to purchase, and the executor repurchased from the stranger, the sale would be good. Executors and administrators, who have the property of their testator in their hands, hold that property in trust for the payment of the debts and legacies, and for the application of the surplus according to the will of the testator, or according to the statute of distribution; and courts of equity proceed, in cases of this kind, as in the execution of trusts. Hence the law applicable to trustees purchasing the property of their cestuis que trustent is likewise applicable to executors and administrators purchasing the property of their testator."

Keeping this rule in mind, that the administratrix of the estate of Richard Worthington could not lawfully enter into any transaction involving this property which was to result in a personal benefit to herself, we are in a position to understand the effect of the

order of the court approving the compromise between Margaret
Worthington and Joseph J. Little, as receiver.   Mr. Little, as re-
ceiver, having through deception secured the approval of the pro-
posed compromise by a representative of the judgment creditors,
petitioned this court for an order sanctioning the arrangement.
In this petition there is no suggestion that Margaret Worthington
is acting as administratrix, or even that she has been appointed to
act in such capacity.   It is simply recited that Richard Worthing-
ton, prior to the appointment of Mr. Little as receiver of the Worth-
ington Company, had secured a number of life insurance policies,
aggregating about $40,000, "which policies were in most cases, if
not all, made payable to his wife, Margaret Worthington; and said
Margaret Worthington now claims to be entitled to all said pol-
icies, and the moneys due thereon."   He then sets up his alleged
equitable claim to such policies, and asks the court for an order
approving the proposed compromise, by which the said Margaret
Worthington was to have 37½ per cent. of the proceeds of the pol-
icies, in consideration of the discontinuance and settlement of a
number of suits at law then pending against her, brought by Lit-
tle, as receiver, to recover certain moneys claimed to have been
wrongfully taken from the Worthington Company.   Acting upon
this petition, and with no knowledge of the fact that the policies
now in dispute were payable to Richard Worthington or his es-
tate, or that Margaret Worthington was engaged in this compro-
mise in her capacity as administratrix, the court issued its order
of approval of the compromise as outlined in the petition; the
second clause of the order reading as follows:

"That the said Joseph J. Little, as receiver, is hereby authorized and empow-
ered to accept from Margaret Worthington, in compromise and settlement of
all pending and future litigation, assignments of all her right, title, and inter-
ests in said life insurance policies issued on the life of Richard Worthington,
and otherwise, upon the following terms and conditions."

Then follows a recital of the terms of the proposed compromise.
   Margaret Worthington, as an individual, had absolutely no right,
title, or interest in either of the two policies properly involved in
this litigation; and the order of the court could not, therefore,
refer to these policies, or give any standing to the alleged title of
Joseph J. Little, receiver.   The only interest which Margaret
Worthington could have had in these two policies was as admin-
istratrix, and this was a mere equity, depending on the discharge
of the prior claims of the judgment creditors.   She was not before
the court, in the proceeding, asking for the sanction of this agree-
ment.   She neither asked for, nor could the court have granted
her, the right to enter into this compromise agreement as admin-
istratrix, because it sought to deal with the property for her own
personal benefit; and the entire proceeding, in so far as it relates
to the policies in dispute, was without force or effect.   The court
never had any jurisdiction of the property.   Margaret Worthing-
ton personally had none, and as administratrix she could not, in
law, have been a party to the contract.   All moneys which have
been paid to her pursuant to this order of the court, in so far as

it has been derived from the policies which by their terms were made payable to Richard Worthington or to his estate, have been made in fraud of the creditors of Richard Worthington, as represented by this plaintiff; and equity would fail of its duty in the present case if it neglected to order its restoration in payment of the judgment of this plaintiff.

It only remains to consider the order in the interpleader action. In this action the insurance company had no interest, except to be protected in the payment of the moneys which it had set aside for the discharge of its obligations under the three policies of insurance upon the life of Richard Worthington. One of these three policies was payable to Margaret Worthington, and as to this the title of Joseph J. Little as receiver was undoubtedly good; and it was proper that the court should issue the order directing the fund to be paid into court, and thence into the hands of the receiver, by him to be disposed of as the previous order had directed. This order could not, however, give the defendants Little (receiver) and Margaret Worthington any immunity from their obligations as trustees of that portion of the fund to which they had no title. The insurance company, in its interpleader action, asserted that it "is justly indebted to some one of the defendants or set of defendants in the sum of $13,598, and is ready to pay the same to the defendant or defendants lawfully entitled thereto." It was the desire of the insurance company to pay its obligations. No one at the time of the interpleader action claimed title to the insurance policies, except the defendants named in its papers; and, believing that it owed this money to some one or more of these parties, it asked to be permitted to pay it into court, that it might be freed from any annoyance in the matter. There is some controversy as to whether the insurance company agreed to the order, in so far as it directed the payment of the moneys over to Little, receiver; but as this order cannot be attacked collaterally, and it is unnecessary in determining the judgment which should be entered, it is not profitable to go into the evidence upon this point. The money is still in the hands or in the control of the parties who are holding the avails of these insurance policies as trustees for the judgment creditors of Richard Worthington. The greater part of it is in the hands of an officer of this court.

For the foregoing reasons, we think the judgment should be modified as follows: On the appeal of the defendant the Ætna Life Insurance Company as against the plaintiff, the judgment should be affirmed; and on the appeal of said defendant and of the plaintiff as against the other defendants the judgment should be modified so as to direct that the plaintiff recover, not only of the defendant the Ætna Life Insurance Company, but also of the two defendants, Margaret Worthington, individually and as administratrix, etc., and Joseph J. Little, receiver of the Worthington Company, the sum due on the plaintiff's judgment, with interest and costs; and in case the said sum is paid by the defendant the Ætna Life Insurance Company, or collected from that defendant by the plaintiff, then said last-named defendant shall recover of

its co-defendants, Margaret Worthington, individually and as administratrix, etc., and Joseph J. Little, as receiver of the Worthington Company, the amount so paid by said defendant insurance company; and, as between themselves, the said defendants Margaret Worthington, individually and as administratrix, etc., and said Joseph J. Little, as receiver of the Worthington Company, shall be liable for such payments in the proportion of 37½ per cent. by the said Margaret Worthington, and 62½ per cent. by said Joseph J. Little; and that the defendant the Ætna Life Insurance Company also recover of said last-named defendants the costs of this appeal. All concur.

HATCH, J. The very thorough discussion which this case has received by Mr. Justice WOODWARD, and in which I concur, requires no further consideration, in its general features. The only question upon which I have any doubt has relation to the power of this court in the direction of a final judgment upon all the issues which the case presents, and which finally disposes of the whole subject-matter of the controversy. But, in view of the findings of the learned trial court, but little doubt can exist either as to the power of the court to make such judgment, or as to the propriety of such action. The court has found, upon sufficient evidence to sustain the finding, that the assignment of the policies of insurance made by Margaret Worthington to Joseph J. Little as receiver was so made with intent to hinder, delay, and defraud the creditors of Richard Worthington, and that the receiver had notice of the fraudulent character of such assignment, and knowledge, also, of the appointment of the plaintiff as receiver, and of his rights in the premises. The court further found that, at the time when the money was paid by the defendant insurance company to the chamberlain of the city and county of New York, Little and Margaret Worthington had notice of the commencement of this action, and also that the counsel for such persons contemplated the possibility of interference with such settlement, and payment by the creditors of Richard Worthington. The result which logically follows these findings is that, by virtue of fraud, Little and Margaret Worthington have profited to the extent of the payment made to them. Neither of these parties could take anything by virtue of the policies of insurance payable to Richard Worthington, in consequence of their fraudulent acts; and it is somewhat difficult to see how they can, as against any person rightfully entitled thereto, hold the proceeds of such policies, when such right to hold is based primarily upon the policies, the possession of which was accomplished, and is now sought to be supported, by virtue of their fraudulent acts. While it is found by the court, and established by the evidence, that all of the steps taken by Little, as receiver, and Margaret Worthington, to vest in Little the possession of the policies, were fraudulent, yet the conclusion is reached by the learned court that the final act by which the possession ripened into the proceeds, through the order of the court directing the payment of the money, was not tainted with fraud.

It would seem that, if the scheme was fraudulent by which Little became possessed of the policies, any act thereafter committed by him in securing ths proceeds of such policies must necessarily also have been tainted with fraud to such an extent as to make his holding of the money, as well as the holding by Margaret Worthington, fraudulent, as against any person or company whose rights in the premises had been impaired, or whose liability had been increased, by such acts; and this without regard to whether the money was paid over by consent, under a misapprehension of the facts, or whether it was the result of affirmative and active fraud as the inducing cause. But, however this may be, we may accept, for the purpose of our determination, the finding of the court that there was no fraud perpetrated by Little or Margaret Worthington, or their respective counsel, in obtaining the order for the payment of the money to the chamberlain of New York. But, as we view the other findings and the evidence in the case, the latter finding in no sense militates against the former; for the only authority to receive the money was based upon the fraudulent possession of the policies of insurance, and the claim made by virtue of such possession, and such is the finding of the court. Under such circumstances, it ought not to avail the fraudulent beneficiary, that he was guilty of no fraud in exchanging the claim under the policies for the actual cash, for it was by virtue of his former fraudulent acts, and those alone, that he was placed in the position to make the exchange and receive the money. Such conditions should lead the court to be astute in finding a remedy for a party, properly before the court, who has in fact been defrauded through the transaction as a whole.

The court below seems to have proceeded upon the theory that the issue raised by the defendant insurance company was not germane to any issue presented by the complaint. The complaint, however, averred that the transfer of the policies of insurance from Margaret Worthington to Little, as receiver, was made with intent to hinder, delay, and defraud the creditors of Richard Worthington, and was therefore void. There could be no right in Margaret Worthington, or in Little, or in either, to any of the policies payable to Richard Worthington, or in their proceeds, as against the insurance company, unless they had right and title to the policies, and the moneys secured to be paid thereby. While these persons might hold the proceeds, as against the plaintiff, if obtained upon an independent demand, as we held in our former decision (Reynolds v. Insurance Co., 6 App. Div. 254, 39 N. Y. Supp. 885), such right does not avail against a party who has mistakenly paid the money, when such party is properly before the court, and such fact appears. By the supplemental answer which the defendant insurance company was permitted to serve is averred the determination of the court respecting the legal rights of the plaintiff and its co-defendants. It further avers that it has no interest in the controversy, except to pay what it is obligated to pay to the rightful party. It further avers that it has been induced to pay, and has paid, the money to Little, as receiver, and to Margaret Worthing-

ton; and in this connection it avers that these parties received this money with the knowledge that they were not entitled thereto, and that their claim thereto was fraudulent, both as to this defendant and to the plaintiff in this action. It is true that the answer contains the averment that the defendants and their counsel conspired, and by tricks and devices procured the court to grant an order by which the money was obtained for this defendant; and upon these last averments the court has found that there were no fraud, tricks, or devices used, as averred, to obtain the order, which was entered. But this finding must be limited to the matters averred in connection with the immediate proceedings relating to the making of the order. Unless so limited, such finding would be in conflict with the former findings, that the policies were held in fraud of the rights of creditors, and invested the defendants Little and Worthington with no rights. We must treat the answer of the defendant insurance company as averring such facts, and that the finding of the court establishes the truth of the averment. The prayer for relief in this answer is that, in accordance with the decision, the co-defendants be adjudged to pay to this defendant the sum which they have thus fraudulently received. We think that this answer raised an issue which was germane to the controversy, and relevant to the subject-matter of the action. In Derham v. Lee, 87 N. Y. 599, it was asserted that the court possessed the power, having the parties and the facts before it, "to adjust the rights, not only between the plaintiff and defendants, but as between co-defendants." The provisions of section 452 of the Code of Civil Procedure are authority for such procedure, and such practice has received uniform support by the courts. Mahr v. Society, 127 N. Y. 452, 28 N. E. 391. In the present case the parties are all before the court. There is no one rightfully entitled to this money who can be prejudiced. The defendant Little, by virtue of his receivership, is an officer of the court, and holds this money subject to its order. The defendant Worthington is a fraudulent beneficiary of the fund secured by fraudulent collusion with Little, and her affirmative breach of a fiduciary trust. Under such circumstances, the courts ought not to let forms of procedure work injustice, or compel circumlocution in obtaining legal redress from such acts. The plaintiff cannot be prejudiced by a judgment which directs the payment of this money by the defendants Little and Worthington to the insurance company. Nothing in such judgment can defeat, impair, or delay his right to the enforcement of his judgment against such insurance company. The judgment, as between the co-defendants, in no wise affects the plaintiff, and places no limitation upon his right to obtain and enjoy the fruits of his litigation. It follows, therefore, that the defendant insurance company becomes entitled to have repaid, either to itself or to the plaintiff in the action, the money to which the plaintiff is entitled. Otherwise the insurance company will be compelled to pay the money twice, and, in order to obtain relief, resort to another action, only to be met in such action by the order which has been made directing the payment of the money, and which the court at

special term has refused to modify or set aside, upon the ground that entire relief could be secured in this action.

I am also of opinion that the plaintiff should succeed upon his appeal. The finding of the court is that, at the time when the moneys were paid by the insurance company to the chamberlain by virtue of the order in the interpleader action, Little (as receiver) and Margaret Worthington had knowledge of the pendency of the present action, and of the appointment of the plaintiff as receiver, and contemplated the possibility of interference by the creditors of Richard Worthington with such settlement. The court further found "that said Little, receiver, did not obtain the money upon the said policies, or either of them, upon his own independent claim as receiver of the Worthington Company." These findings materially change the status of the case as presented to the court upon the former appeal; for, as we have seen, the decision of the court upon the first appeal was based upon the fact that there was no knowledge upon the part of Little or Margaret Worthington of the pendency of this action, and that Little, as receiver, obtained the payment of the money to him upon a distinct and independent claim which he held and made as receiver, and upon the further fact that in making such claim he acted in good faith, and without fraud upon the rights of the plaintiff. The present findings of the court, based upon evidence substantial and satisfactory to their support, controvert both of these positions, and therefore resolve the distinction in favor of the plaintiff, which alone supported our former decision, in denying him the right to pursue the money in Little's hands. It is to be borne in mind that upon the former appeal no decision had been made by the court, and for that reason we held that there had been a mistrial of the action. The court, in its discussion of the case, treated the opinion of Mr. Justice Cullen as a finding of fact, so far as the learned justice had stated his conclusions of fact therein. But, so far as this appeal is concerned, we have before this court a new decision, based upon distinct findings of fact and of law, which the court was clearly authorized to make, in consequence of which, even though the evidence be the same as was presented to the court before, as there never had been a decision upon the facts, the former insufficient and imperfect disposition of the case can in no sense and in no view control this decision, except so far as its reasoning upon the law commends itself to the judgment of the court. Such view of the law, as we have seen, results in a radical modification, by reason of the facts which upon the present trial the court had the authority to find, and has found. This leads me to the conclusion that upon the finding of the court the judgment should be modified as to the defendants Little, receiver, and Margaret Worthington, by compelling them to account for the moneys wrongfully received by them, as against the plaintiff, and also as against the Ætna Life Insurance Company, and to compel the repayment by Little, receiver, and Margaret Worthington, of the moneys so wrongfully received by them to the plaintiff; and the judgment as modified should be affirmed, with costs to the plaintiff and to the Ætna Life Insurance Company.