In the Matter of the Estate of NELLIE HANNA, Deceased.

Surrogate's Court, Kings County, January 28, 1936.

*Joseph Hamerman*, for Frederick M. Butler and Leon Caminez, as executors and respondents on application for appraisers.

*Jackson, Fuller, Nash & Brophy*, for Helen M. Hanna, preferred legatee and petitioner on this application, objectant to account; and for Donald Hanna, legatee and objectant to account, who joins petitioner (his sister) in her application for appraisers.

*Charles Coleman Miller*, for Florence Butler and others, legatees-objectants to account, who appear in opposition to application.

WINGATE, S. As this court has pointed out in two previous memoranda (N. Y. L. J. June 14, 1935, p. 3083, and Sept. 19,

1935, p. 832), it was the obvious expectation of the testatrix that the Hempstead property, which was the main asset of her estate, should be the source of the moneys to pay the legacies under her will. Apparently realizing that economic conditions were such as to make a prompt disposal impossible, she gave her executors a broad discretion as to the time when liquidation should be effected, and expressly postponed the due dates of the bequests " until said real property shall have been sold and converted into cash at such time and in such manner as in the discretion of my executors they may elect."

At the present time there is a virtual impasse. The executors have continued to hold the property and have taken no position in regard to the exercise of the discretionary powers vested in them except in so far as it may be implied from their non-action.

More than three years has now expired since the date of the qualification of the fiduciaries, and the preferred legatee is naturally desirous of obtaining some benefit from her testamentary gift. She has filed a consent in purported compliance with section 268 of the Surrogate's Court Act, to take over the assets of the estate at certain specified valuations, and has applied for the appointment of an appraiser to determine the actual value of the property now in the hands of the executors.

Certain deferred legatees oppose the granting of the application, alleging non-compliance with the provisions of section 268. In the estimation of the court, these objections are technically correct.

Three situations are contemplated in the section; *First,* where all parties consent to a distribution in kind; *second,* where a particular legatee or distributee files a consent to take specified assets " at a value to be ascertained by appraisement," and *third,* " where it appears that a sale thereof, for the purpose of payment or distribution, would cause a loss to any infant or incompetent legatee or distributee, and the value thereof has been fixed by appraisement."

The succeeding paragraph appears to be the one which has caused the trouble. It reads: " The value must be ascertained, *if the consent does not fix it,* by an appraisement under oath, made by one or more persons appointed by the surrogate for the purpose." (Italics not in original.)

It is wholly obvious that the third subdivision is applicable only where the rights of an infant or incompetent are involved and is not pertinent where, as here, all of the parties are adults. It is equally patent that the first provision envisages only a situation in which all persons interested in the estate are agreed. This is also presently far from the fact. The rights of the instant applicant are, therefore, capable of generation only under the second sub-

division, a condition precedent of the operation of which is stated to be the filing of a consent to accept specified property in kind " at a value to be ascertained by appraisement."

In the present instance this has not been done, since the only consent of the legatee is to accept at a specified valuation. Her error is no doubt due to a reliance upon the words which have hereinbefore been italicized in the quotation of the paragraph of the statute which follows the enumeration of the three situations in which a decree directing payment in kind is permissible. The only one of the alternatives to which the italicized words applies is, however, the first, since both of the others expressly contemplate appraisement. It is obvious, therefore, that, viewed from a strictly technical standpoint, the objections of those actively opposing the right of the preferred legatee are well founded.

The matter is, however, viewable in another light, namely, as a concrete offer to purchase the assets of the estate in question at a stated valuation. The executors have, in essence, assumed the position before the court that in spite of their implied desire to close the estate, they are unable to do so, in consequence of their inability to liquidate the assets in question, upon which the applicant has a preferred claim for the solution of the testamentary gifts in her favor. By her offer she has, in effect, destroyed this position by establishing a market therefor. This is an essential preliminary step by her to an application to compel the executors to liquidate by what is in effect a sale to her at the prices specified. On such secondary application, her success would depend on two demonstrations, *first*, that the price which she has offered was reasonable, to the determination of which an appraisal would be relevant; and, *second*, that the action of the executors in longer withholding the assets from sale was an abuse of the discretion reposed in them by the testatrix.

Whereas the court by no means prejudges the second essential demonstration in this regard, it cannot be denied that the policy of the law contemplates a reasonably expeditious liquidation and settlement of decedent estates, and does not encourage indefinite holding by executors for purposes of out and out speculation even though a particular testator may have evinced an inclination for the adoption of such a course. What period of retention is to be deemed reasonable must depend upon the particular facts of each individual case. In the usual demonstration, it has been held that eighteen months after qualification is an approximate limit. (*Matter of Weston*, 91 N. Y. 502, 511; *Matter of Surpless*, 143 Misc. 48, 52; *Matter of Taft*, 145 id. 435, 441.) In the present instance more than double this time has already elapsed, so that it would seem to

follow that an inference would arise from the facts that still further retention would be improper. This might, no doubt, be rebutted by a showing of conditions warranting a decision based on sound business judgment and not on mere speculative hopes, that a further retention was desirable. The burden of this demonstration would, however, rest on those asserting the exceptional conditions to exist.

It is obvious, therefore, that the applicant possesses two potential modes of procedure. She may elect to pursue her rights under section 268, in which event a new consent, conforming to the provisions of the second subdivision of the section, should be filed by her. In the alternative, she may adopt the second procedure outlined, but if she does, and the secondary application is decided against her, the expense of the appraisement may conceivably be assessed against her personally.

However, in either contingency, the appointment of appraiser is proper and the application therefor will be granted.

Enter order on notice.