In the Matter of the Estate of AARON SEGAL, Deceased. (TWO Proceedings.)

Surrogate's Court, Kings County, March 27, 1939.

*Moss & Merrell* [*Louis J. Merrell* and *Louis J. Moss* of counsel], for Fannie Goldberg, as executrix and trustee, petitioner.

*Goodson & Potts* [*William C. Goodson* and *John Potts* of counsel], for Morris Segal, as executor and trustee, petitioner.

*Wexler & Sternberg* [*Milton Wexler* of counsel], for Joseph Segal, as executor and trustee, petitioner.

*Cyrus S. Jullien*, special guardian for six infant trust beneficiaries.

*Blum & Jolles*, for the Polish Consulate.

*Milton H. Mandel*, for Yeshiva Akiva Eiger, legatee.

*Simon Metrik*, for the Talmudical Institute of Harlem, legatee.

WINGATE, S.    The chief issues on the present motion to confirm the report of the referee herein concern the propriety of action of the three accounting executors in respect of their dealings with two second mortgages which constituted assets of the estate.

The owners of the properties on which these mortgages were secondary liens were two corporations which were owned or dominated by two of the executors, respectively, Crestmore Builders, Inc., by Fannie Goldberg, and Permanent Construction Corporation, by Joseph Segal.    The first named corporation owned

the fee of 310–318 Roebling street, Brooklyn, which was improved by a two-story structure containing a garage and seven stores. The second was the record owner of property at 255 Lefferts avenue, Brooklyn, which was a six-story elevator apartment house.

The estate's second mortgage on the Roebling street property, which was in the face amount of $35,000, was sold by the executors to Morton Miller, the son of Fannie Goldberg, one of the executors and the dominant factor in Crestmore Builders, Inc., the owner of the fee of the property, for the sum of $6,500.

The estate's second mortgage on the Lefferts avenue property, which was in the face amount of $40,000, was sold to Pearl Segal, a daughter of Joseph Segal, one of the executors and the dominant factor in Permanent Construction Corporation, the owner of the fee of the property, for the stated consideration of $20,750, which was reduced by reason of unpaid taxes, etc., which had accumulated against the property, with the result that the net figure received by the executors was only $11,293.

These transactions received the assent of all three executors, who, whereas all children of the deceased, were obviously on terms of unfriendliness, not to say enmity, toward each other.

Objection thereto is interposed solely by the special guardian for infants. The infants whose interests alone would be adversely affected by impropriety in the transactions, if any exists, are the children of Morris Segal, who was one of the executors, and the only one who did not benefit by the inadequacy of price, if any, in the sale of these two assets. Morris Segal assented to the transactions and participated in their consummation.

It may be observed in passing that his approval is a circumstance worthy of consideration in evaluating the probable propriety of the transactions, since it seems improbable that he would have ratified a transaction which injuriously affected his own children for the benefit of his brother and sister in view of his strained relations with the latter.

The policy of the law of this State respecting purchases of estate assets by a fiduciary holder thereof has been consistently stated since very early times, and is to the effect that any person " standing in the relation of a fiduciary capacity, cannot deal with or purchase the property, in reference to which he holds that relation. * * * The usual and ordinary right and remedy of the *cestui que trust* is, to affirm the sale and claim its enhanced value, or to hold the fraudulent trustee to the sale. He has his election within a reasonable time to do either." (*Forbes* v. *Halsey*, 26 N. Y. 53, 65; *Gardner* v. *Ogden*, 22 id. 327, 340; *Terwilliger* v. *Brown*, 44 id. 237, 241.)

The doctrine noted applies not only to direct purchases by fiduciaries of the trust property but is equally applicable where "they purchase indirectly by procuring a third person to purchase in the first instance," later reaping an individual advantage from the transaction. (*Reynolds* v. *Ætna Life Ins. Co.*, 28 App. Div. 591, 609, 610; affd., 160 N. Y. 635.)

A recent expression of this application of the rule is found in *Matter of Fulton* (253 App. Div. 494), in which a confirmation of a sale by an executrix to her husband was reversed, the court saying (at p. 496): "This rule that a beneficiary may at his option have set aside a conveyance of trust property by a trustee to her husband without showing more, is quite universal. * * * A *cestui que trust* may disaffirm the sale and have it set aside whether it be *bona fide* or not, and action by the court is not dependent upon the proof of actual injury, for the court acts in such cases not so much to protect the particular *cestui que trust* as to uphold and enforce the sound principle of public policy."

No sound distinction may be drawn between a conveyance of this variety to a person of the executor's family who stands in a marital relationship to him and a like conveyance to a son or daughter, as in the present case. The transaction must be declared void at the election of the *cestui que trust* unless conclusively demonstrated to have been made for a full consideration under circumstances which preclude the possibility of any improper advantage to the individual fiduciary himself.

The propriety of the reservation to the applicability of the otherwise universal rule of invalidity implied in the foregoing statement has, so far as the court is aware, never been enunciated by appellate authority. The practical current contact of the court with such problems, however, indicates its soundness. The instances are legion in which estates find themselves saddled, as was the present, with first or subordinate mortgage securities for which no ready market is available even at serious sacrifices of their face value. Sooner or later such estates must be liquidated, since the distributees have a right to demand their money and may, after the elapse of a reasonable time, validly decline to permit fiduciaries longer to retain the assets in order that they may speculate for an enhancement in selling price. (*Matter of Hanna,* 158 Misc. 177, 179; *Matter of Desmond,* 164 id. 950, 952.)

In such a situation what is a fiduciary to do? He is under an obligation to sell for the best price obtainable and at as close an approximation of the intrinsic value as possible. As a practical matter the most likely and frequently the only potential purchaser of a mortgage security is the owner of the equity, and if, as is sub-

stantially the present situation, the fiduciary is the owner of the fee and is absolutely precluded from purchase, the only possible market will frequently be destroyed. If private sale is impossible and the fiduciary resorts to public auction it will frequently happen that unless he himself is permitted to bid at the sale no more than a nominal offer, if indeed any at all, will be secured. If he, himself, is willing to pay more than such offered sum, is it in the interest of the estate and his *cestui que trustent* that he should be denied that right? The practical solution, whether or not it be unassailable under the strict letter of the rule, which this court has frequently countenanced, is to accord the fiduciary a right to bid at the sale provided ample notice thereof and of the time of sale is given to all interested parties.

In the present instance, whereas such procedure which invariably must result in a fair disposal of the asset in question by reason of the availability to every interested party of acquisition of the item of property on equal terms, was not adopted, nevertheless, so far as the adults were concerned, its equivalent was observed. The infants did not receive that privilege which, for obvious reasons, would have accorded no benefit to them in any event.

They have, under the established rules of law hereinbefore noted, two remedies available at their election, which, for present purposes, means at the election of their representative, the special guardian. They may obtain a declaration that the transfer was void and secure a reassignment to the estate of the assets sold, naturally upon a return of the consideration paid. This relief is not sought.

Their alternate remedy, which actually is invoked, is to claim from the executors the difference between the consideration actually paid and the fair market value of the property at the time of the sale. It is the contention of the executors that the price actually received was, in fact, such reasonable market value, and they have adduced evidence which has satisfied the learned referee of the soundness of their assertion by a showing of widespread efforts of sale and that the prices actually received exceeded the best offer which any other person was willing to make. The only controverting demonstration by the able special guardian is addressed to the *intrinsic* value of the mortgages.

It requires no testimonial demonstration to establish that under current conditions, with a majority of the public anathematizing mortgage securities of all varieties, junior liens of this variety, even on good properties, are difficult, if not impossible, of disposal at even a fraction of their presumable intrinsic values.

Whereas the burden of proof no doubt rested on the executors to demonstrate that the fair market value was actually received,

they made a *prima facie* showing in this regard which was not refuted by anything adduced by the special guardian since he confined himself to adducing proof of intrinsic value, which did not meet the issue.

The court is, accordingly, in agreement with the conclusion of the learned referee that on the composite demonstration of the record the executors were under the obligation to sell the two second mortgage securities in question, that they obtained the best prices for them which were reasonably available and that, consequently, the objections in this regard should be overruled.

The remaining issue concerns the fees properly payable to the attorneys for the executors. Whereas the total approved by the referee and charged against the general assets might be deemed excessive in an estate requiring a shorter time for settlement and involving fewer difficulties in the process, the court is impressed with the argument that certain of the difficulties and consequent expense of administration were caused and must have been contemplated by the testator himself when he named his three children, with whose mutual antagonism and distrust he must have been familiar, as coexecutors with equal authority. It is, accordingly, not disposed to quarrel with the fixation or allocation of the compensation of their several attorneys as recommended by the learned and experienced referee.

It follows that his report will be confirmed *in toto.*

Enter decree on notice in conformity herewith.